UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

STACY P.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 1:20-cv-00657-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Stacy P. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g). For the reasons set forth below, that decision is AFFIRMED.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last name.

1 – OPINION AND ORDER

## PROCEDURAL HISTORY

Plaintiff protectively filed for DIB and SSI on July 27, 2017, alleging disability beginning on November 5, 2016. Her application was initially denied on October 16, 2017, and upon reconsideration on January 17, 2018. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on March 5, 2019. After receiving testimony from plaintiff and a vocational expert, the ALJ issued a decision on April 24, 2019, finding plaintiff not disabled within the meaning of the Act. Tr. 15. The Appeals Council denied plaintiff's request for review on February 25, 2020. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

2 – OPINION AND ORDER

**SEQUENTIAL ANALYSIS AND ALJ FINDINGS**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 5, 2016. Tr. 17. At step two, the ALJ determined plaintiff suffered from the following severe impairments: history of aneurysm, status post stent placement; migraine headaches; and right eye vision loss (20 CFR 404.1520(c) and 416.920(c)). Tr. 17. The ALJ found that plaintiff's "medically determinable mental impairments of anxiety and depression, considered singly and in combination, do not cause more than minimal limitation in [plaintiff's] ability to perform basic mental work activities and are therefore non-severe." Tr. 16.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 17. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) "except she can perform tasks involving occasional climbing of ramps or stairs, but she must avoid climbing ladders, ropes, of scaffolds. She can occasionally balance, kneel, crouch, crawl, or stoop. She must avoid exposure to loud

noise, vibration, or workplace hazards (including dangerous machinery or unprotected heights). She must avoid tasks that require depth perception." Tr. 19.

At step four, the ALJ found plaintiff was able to perform past relevant work as an accounting clerk. Tr. 23. Therefore, the ALJ did not reach step five, and found plaintiff was not disabled from November 5, 2016, through the date of the decision, April 24, 2019.

## DISCUSSION

I.  **Opinion of Scott Alvord, PsyD**

  A.  **Step Two**

Plaintiff contends the ALJ erred by failing to include Dr. Alvord's diagnosis of neurocognitive disorder diagnosis at step two.

At step two, the ALJ determines whether the claimant has an impairment that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence. SSR 96-4p, *available at* 1996 WL 374187; 20 C.F.R. § 404.1513(a). An impairment is "not severe" if it does not "significantly limit" a claimant's ability to conduct basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also Sullivan v. Zebley*, 493 U.S. 521, 525 (1990).

The claimant bears the burden at step two. 20 C.F.R. §§ 404.1512(a), 416.912(a). However, the step two threshold is low; the Ninth Circuit had described it as a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two. *Lewis*, 498 F.3d at 911.

Plaintiff was evaluated by Dr. Alvord on March 14, 2019.  Tr. 1087.  Following an interview and testing, Dr. Alvord diagnosed plaintiff with major neurocognitive disorder based on her cerebral aneurysm, as well as a mood disorder, and indicated that major depressive disorder had to be ruled out.  As relevant here, the Listings describe neurocognitive disorders as:

> [S]ignificant cognitive decline from a prior level of functioning in <u>one</u> or more of the cognitive areas:
> 1. Complex attention;
> 2. Executive function;
> 3. Learning and memory;
> 4. Language;
> 5. Perceptual-motor; or
> 6. Social cognition.

Listing 12.02 (emphasis in original).

The ALJ observed that Dr. Alvord's "one-time interaction with [plaintiff] was marked by [her] 'downtrodden, tearful, and anxious' demeanor – as well as 'haltingly and minimally impoverished' speech"; however, the ALJ discounted Dr. Alvord's opinion because these symptoms were not present one month prior, during plaintiff's February 26, 2019 appointment with Carla Bloem, PA-C.  Tr. 22 (citing Tr. 1085).

Plaintiff argues that the ALJ's reasoning is flawed because Bloem's chart notes are "largely consistent" with Dr. Alvord's observations, except that Bloem found plaintiff had a "normal" vocabulary "versus the 'minimally impoverished' Dr. Alvord noted." Pl. Br. 10.  But the reports by Dr. Alvord and Bloem in fact contain significant differences.  Dr. Alvord observed that plaintiff reported "severe neurocognitive deficits," "lamented poor memory, focus, and attention," "described mild speech producing deficits," and "lamented word finding difficulties." Tr. 1088.  Plaintiff also reported that she often fell and had knocked out several of her teeth.  *Id.*  On the other hand, Bloem observed that the treatment for plaintiff's aneurysm "went very well," and while plaintiff unfortunately has vision loss out of her right eye, plaintiff's speech and

5 – OPINION AND ORDER

language were "normal," she displayed only mild cognitive symptoms, her recent and remote memory were grossly intact, she was knowledgeable about current events and past history, and her vocabulary was normal. Tr. 1085. Also, plaintiff reported to Bloem that her falls had resulted in "no significant injury." *Id*.

The ALJ further discounted Dr. Alvord's opinion because it conflicted with the February 2019 report by Rex Strickler, PA-C, who found that plaintiff's mood, affect, attention, and concentration were all "normal." Tr. 22 (citing 21F/3). Plaintiff argues that the ALJ did not explain how Strickler's report undermined Dr. Alvord's opinion, particularly considering that Dr. Alvord had conducted testing. However, the ALJ referenced portions of Strickler's chart notes[2] in the same way he relied on Bloem's chart notes to reject Dr. Alvord's opinion—because plaintiff's symptoms were not present when she saw these two medical professionals in February 2019, just one month before she saw Dr. Alvord. Indeed, additional chart notes prior to February 2019 indicate that plaintiff displayed no cognitive or emotional issues, and had normal mentation, language, and speech. In April 2017, plaintiff displayed "no confusion/cognitive changes" (Tr. 610); was "oriented 3x3, speech fluent, participates in exam briskly" (Tr. 611); had "normal mentation, normal speech" (Tr. 613); her speech was "clear, fluent" and she had "[n]o confusion" (Tr. 621); and she "denie[d] speech, mentation changes" (Tr. 698, 700). In May 2017, plaintiff had normal mentation and normal speech, was emotionally labile, followed commands, answered questions appropriately (Tr. 482); and had normal mentation and normal speech (Tr. 585, 590, 592, 600). In July and October of 2017, plaintiff denied changes in speech (Tr. 552, 850), and in November 2017, she was oriented to time, place, person, and situation, had

---

[2] The ALJ rejected portions of Strickler's opinion because it conflicted with his own treatment notes and Bloem's opinion. Tr. 22.

normal naming comprehension and repetition, and her speech was fluent (Tr. 1066). In April 2018, it was noted that plaintiff's potential for rehab was "good" (Tr. 1025), and in December 2018, plaintiff presented with normal mood and affect and normal attention span and concentration (Tr. 1036). Finally, in January 2019, plaintiff denied that she could not speak, and presented as alert and cooperative with normal attention span and concentration. Tr. 2031.

On this record, plaintiff did not meet her burden, the ALJ did not err in failing to find, that she had a major neurocognitive disorder that constituted a severe impairment at step two.

**B.     Persuasiveness**

Plaintiff filed her application for benefits on July 20, 2017. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence under Title II, and 20 C.F.R. § 416.920c governs under Title XVI. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017).

Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5). The factors of "supportability" and

7 – OPINION AND ORDER

"consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

Plaintiff argues that the ALJ erred by failing to apply the supportability factor in analyzing the persuasiveness of Dr. Alvord's opinion. As the Commissioner concedes, the ALJ did not use the word "supportability" in his decision. Def. Br. 7. But the regulations define

"supportability" to mean "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Here, in explaining why Dr. Alvord's opinion was unsupported, the ALJ cited to recent observations by other medical practitioners, as well as Dr. Alvord's failure to address how plaintiff cared for her three children, particularly in light of the fact her husband is disabled with blindness and neuropathy. The ALJ declined to adopt Dr. Alvord's opinion, "[i]n light of these inconsistencies and omissions." This was sufficient to address the supportability factor, as well as the consistency factor.

Plaintiff argues that the ALJ erred because Dr. Alvord indeed mentioned plaintiff's children, and contends "the mere fact that a claimant cares for small children does not constitute an adequately specific conflict with the claimant's reported limitations." Pl. Br. 10. In his report, Dr. Alvord briefly mentioned the fact that plaintiff has three children, but did not address plaintiff's claimed limitations in light of her childcare responsibilities or the fact that her husband is also disabled. Regardless, the ALJ properly addressed the supportability factor by observing that Dr. Alvord's opinion was less consistent with other medical sources and therefore less persuasive.

### C. Marked Limitations

Finally, plaintiff contends the ALJ erred by not specifically addressing Dr. Alvord's opinion that she had marked limitations in the ability to respond appropriately to usual work situations and to changes in routine work setting, and the ability to interact appropriately with

coworkers.³  Pl. Br. 9 (citing Tr. 1093).  Dr. Alvord did not explain the basis of these findings in his check-the-box medical source statement.  Tr. 1093.  However, relevant to these limitations, Dr. Alvord did note in his report that plaintiff sobbed throughout the evaluation, and reported that she cried on a daily basis, experienced panic attacks, was emotionally triggered by thoughts regarding her decline and said "pretty much anything can set me off," and described hopelessness, apathy, lethargy, and fatigue.  Tr. 1088.

As previously noted, the ALJ rejected Dr. Alvord's opinion because although his "one-time interaction with the claimant was marked by the claimant's 'downtrodden, tearful, and anxious' demeanor," "[n]one of these symptoms was present only weeks earlier."⁴  Tr. 22.  Also, as discussed above, the ALJ rejected Dr. Alvord's opinions regarding plaintiff's cognitive functioning for the same valid. reason.  The Ninth Circuit has recognized that an ALJ "need not discuss *all* evidence presented to her," but must explain why "significant probative evidence has been rejected."  *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (emphasis in original).  The ALJ did so here.  Accordingly, there is no error.

//
//
//
//

---

³ In summarizing Dr. Alvord's opinion, the ALJ observed that "Dr. Alvord asserted that the claimant's symptoms would likely cause 'marked' difficulty in her capacity to understand and remember even 'simple' instructions," and "likely miss work more than 4 days per month, or otherwise be off-task for 15% of a typical workday."  Tr. 22.

⁴ The record does indicate that plaintiff was "tearful and crying at times" during her February 1, 2019 medical appointment.  Tr. 1048.  However, at that time, plaintiff attributed her symptoms of headache, nausea, vomiting, and poor appetite to a "legal battle" she was having with her landlord after she was electrocuted by a microwave.  Tr. 1046-47; *see also* Tr. 1048 ("She was crying from her anxiety and thinking about her legal battle.").

10 – OPINION AND ORDER

**ORDER**

The Commissioner's decision is AFFIRMED.

DATED September 28, 2022.

                                                  /s/ Youlee Yim You
                                                  Youlee Yim You
                                                  United States Magistrate Judge